IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 13, 2004

## LON ADELBERT PIERCE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Benton County**
**No. CR690-PC-1     C. Creed McGinley, Judge**

_____

**No. W2003-02384-CCA-R3-PC  - Filed August 20, 2004**

_____

The petitioner appeals the dismissal of his petition for post-conviction relief from his conviction for first degree murder, arguing that the post-conviction court erred in finding he received effective assistance of counsel at trial and on appeal. Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Guy T. Wilkinson, District Public Defender, and Vicki S. Snyder, Assistant District Public Defender, for the appellant, Lon Adelbert Pierce.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett and Beth C. Boswell, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner, Lon Adelbert Pierce, was indicted for the March 21, 1997, first degree premeditated murder of Larry Gene Peppers, Sr., and the attempted first degree murder of Peppers' son. See State v. Lon Adelbert Pierce, No. W1999-01433-CCA-R3-CD, 2000 WL 1664278, at *1 (Tenn. Crim. App. Oct. 23, 2000), perm. to appeal denied (Tenn. Sept. 2, 2003). Following a trial, the jury acquitted him of attempted first degree murder but was unable to reach a verdict on the premeditated murder count of the indictment. Id. The petitioner was thereafter retried on the first degree murder count, found guilty, and sentenced to life imprisonment. Id. His conviction and sentence were affirmed by this court, and, following a delayed appeal, our supreme court denied his application for permission to appeal. Id.

As related in the direct appeal opinion, the petitioner's conviction stemmed from a disagreement with the victim over payment for a truck the petitioner had sold the victim under an informal installment agreement, with the understanding that the victim's wife would record the lien in the petitioner's favor for the unpaid portion of the sale price. Id. When the victim's wife failed to record the lien and the victim failed to make payments in accordance with their agreement, the petitioner became angry and began making statements in the weeks before the murder to various individuals, including Douglas Glenn Whitfield, the owner of a truck stop, and Whitfield's employee, Beth Mary Podgwaite, about his intention of either retrieving his truck or killing the victim. Id. at *2. The direct appeal opinion relates what then transpired:

> On the morning of March 21, 1997, Larry Peppers, Sr., his wife Teresa, and his son Larry Jr. left their home to drive to the North 40 Truck Stop. While traveling along on the highway, they saw [the petitioner], who turned his car around and followed them to the truck stop. The Peppers went inside, and [the petitioner] followed. [The petitioner] confronted the victim, and the victim tried to back away. Mr. Whitfield was concerned about the disagreement taking place inside his business and asked [the petitioner] to go outside. [The petitioner] complied. When the Peppers finished their business, they went outside. As the Peppers attempted to leave, [the petitioner] approached their vehicle. He and the victim exchanged words. Larry Sr. told Larry Jr. to call the police, and the victim [sic] said that Larry Jr. should call the morgue. [The petitioner] said he was going to get a gun. He leaned into his vehicle, which was parked nearby, and retrieved a gun. Twice he pointed the gun at Larry Sr., and Larry Jr. pushed [the petitioner's] arm away. [The petitioner] pointed the gun at Teresa Peppers, and again Larry Jr. pushed [the petitioner's] arm away. As the two struggled over the gun, [the petitioner] fired and wounded Larry Jr. The [petitioner] chased Larry Sr. in the parking lot. Shots rang out, and Larry Sr. fell wounded. The [petitioner] approached Larry Sr. and shot him again as he lay wounded on the pavement. Teresa Peppers ran toward the truck stop, and [the petitioner] followed her. Podgwaite, who was working inside the truck stop, heard the [petitioner] say, "W[h]ere is she? I'm going to kill her." Whitfield intervened and told [the petitioner] to leave. [The petitioner] went outside and stayed on the premises for about five minutes before driving off.

> Larry Peppers, Sr. died from his injuries. Larry Peppers, Jr. survived.

> After [the petitioner] left the truck stop, he changed vehicles and drove to Arkansas. Eventually, he went to Mexico. He lived on

the lam for fourteen months but finally surrendered to authorities in
Phoenix, Arizona.

Id. at **2-3 (footnote omitted).

At trial, the petitioner presented evidence that at the time of the shooting, "he was in dire financial condition," was "very distraught" over the victim's failure to pay, had not slept in a couple of days, and could not remember when he had last eaten. Id. at *3. He also presented expert testimony from a psychiatrist and a neuropsychologist to support a claim of diminished capacity, which included proof that "he was suffering from major depression and hypoglycemia related to diabetes on the day of the crime"; that he "had a below-average IQ in the borderline mentally retarded range"; that he "had a history of major depression and suicidal thoughts dating back to 1994"; and that all of these factors, combined with his sleep deprivation, "resulted in diminished capacity . . . to act intentionally." Id.

On November 4, 2002, the petitioner filed a *pro se* petition for post-conviction relief, alleging ineffective assistance of counsel. Following the appointment of counsel, he filed an amended petition on December 18, 2002, in which he alleged counsel was ineffective at trial and on appeal for failing to subpoena witnesses who could have established that the killing occurred during the heat of passion, for failing to file a Rule 11, Tenn. R. App. P., application for permission to appeal to the supreme court, and for failing to comply with the petitioner's request for a copy of the trial transcript.

The petitioner testified at the February 28, 2003, evidentiary hearing that trial counsel informed him during a meeting in Memphis that he would appeal his case to the Tennessee Supreme Court and later sent him a letter, dated October 25, 2000, to that effect. The petitioner denied that he had received a second letter, dated the same day and sent to the same address, in which counsel stated that after dictating the first letter he had begun "to contemplate whether this was something that [the petitioner] wished for [him] to do," and therefore was advising that unless he heard from the petitioner within the next thirty days, he would not file an application for permission to appeal to the supreme court. The petitioner said he did not learn until September 10, 2002, that an appeal had never been filed.

The petitioner testified he informed trial counsel of witnesses from the truck stop who would have established that the shooting occurred in the heat of passion, but the witnesses never testified at trial. Trial counsel never explained why he failed to investigate or subpoena these witnesses, other than to say that it "wasn't the thing to go to." Trial counsel spoke with him "a couple of times" during the course of his representation, asking if he understood what was going on, and he replied that he "basically" did. However, he did not understand what was happening with the appeals process and felt that trial counsel failed to keep him informed about it. The petitioner also testified that he requested that trial counsel provide him with a copy of his trial transcript, but he failed to do so. On cross-examination, he acknowledged that it was possible he had made statements about killing the victim to witnesses at the truck stop during the two weeks before the shooting.

Trial counsel testified he had been licensed to practice law since 1986. He said that approximately thirty percent of his practice was criminal, and the petitioner's case was not his first murder trial. He testified that when he went to Memphis to discuss the appeal, the petitioner, who had had a heart attack during the second trial, was suffering from diabetes and "felt like . . . he was going to die," "had essentially given up," and "really didn't care" about filing an appeal. Nevertheless, trial counsel appealed the case through the intermediate court level. Two days after receiving the opinion, he dictated his first letter to the petitioner dated October 25, 2000. Trial counsel testified he dictated the second letter later that same day after thinking about the supreme court's criteria for accepting an application for permission to appeal and the fact that the petitioner had no interest in pursuing an appeal. Although he sent the second letter to the same address as the first, he never heard from the petitioner. Trial counsel stated that he investigated and interviewed a number of witnesses from the truck stop. However, because they could have corroborated that the petitioner had threatened to kill the victim, he chose not to have them testify on the petitioner's behalf.

On March 5, 2003, the post-conviction court entered an order granting the petitioner the right to file a delayed application for permission to appeal to the supreme court, finding that, despite the second letter sent to the petitioner, trial counsel had clearly failed to comply with Rule 14 of the Rules of the Tennessee Supreme Court, which sets forth the procedures counsel must follow when withdrawing representation from an indigent client following an adverse ruling of the intermediate appellate court.[1] The post-conviction court stayed all other matters contained in the petition pending

---

[1] Rule 14, "Withdrawal of counsel for indigent party after adverse decision in intermediate appellate court," provides in part:

> Permission for leave to withdraw as counsel for an indigent party after an adverse final decision in the Court of Appeals or Court of Criminal Appeals and before preparation and filing of an Application for Permission to Appeal in the Supreme Court must be obtained from the intermediate appellate court by filing a motion with the Appellate Court Clerk not later than fourteen (14) days after the intermediate court's entry of final judgment.
>
> The motion shall state that: (1) based upon counsel's review of the opinion of the intermediate appellate court, the brief filed on behalf of the indigent party in that court presents such issues as are available for second-tier appellate review if sought by the party acting pro se, and (2) the written notification prescribed by this rule and a copy of the intermediate court's opinion have been forwarded to the indigent party.
>
> The motion shall be accompanied by a copy of the written notification forwarded to the indigent party. The written notification shall state: (1) that counsel does not intend to file an Application for Permission to Appeal and that counsel is asking the intermediate court for permission to withdraw; (2) that the party may file a pro se Application for Permission to Appeal with the Clerk of the Supreme Court if filed within sixty (60) days after entry of final judgment in the intermediate appellate court; (3) the date on which the intermediate court's opinion was released;

(continued...)

the outcome of the delayed appeal. On September 2, 2003, our supreme court denied the petitioner's application for permission to appeal. On September 17, 2003, the post-conviction court entered an order dismissing the petition for post-conviction relief, finding that trial counsel's conduct was not deficient and that the petitioner had "not been deprived of any constitutional right that would support post conviction relief." This appeal followed.

## ANALYSIS

### Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). However, review of the post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

[1](...continued)
      and (4) the date on which an Application for Permission to Appeal is due. The written notification must also reflect the party's mailing address to which the notice was forwarded.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

As he did with the post-conviction court, the petitioner argues on appeal that trial counsel was ineffective for failing to subpoena the critical truck stop witnesses who could have established state of passion, for failing to pursue his appeal to the supreme court, and for failing to provide him with a transcript of the trial. The State responds by arguing, *inter alia*,[2] that the post-conviction court properly found that trial counsel's decision not to subpoena the witnesses from the truck stop was a sound trial strategy and that the petitioner has not shown he was prejudiced by trial counsel's failure to file an application for permission to appeal or to provide him with a copy of the trial transcript. We agree with the State.

When reviewing a claim of ineffective assistance of counsel, we are mindful that we must indulge a strong presumption that counsel's conduct fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel testified he investigated and interviewed the truck stop witnesses, and fully explained the reason he decided not to subpoena them to trial:

> And my concern was bringing all these other potential people in, that
> the jury was going to hear I'm going to kill him if he don't pay me,

---

[2] The State additionally argues that the petition is time-barred because it was filed more than one year beyond the date that the judgment became final. Tennessee Code Annotated section 40-30-10 (a) (2003) provides that a petition for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final[.]" Our supreme court has recognized, however, that in some cases due process requires that this one-year statute of limitations be tolled. See Williams v. State, 44 S.W.3d 464, 471 (Tenn. 2001) (concluding that due process required tolling of post-conviction statute of limitations when petitioner was misled into believing that his counsel was continuing appeals process on his behalf); see also Conley R. Fair v. State, No. E2003-00807-CCA-R3-PC, 2004 WL 370254, at *3 (Tenn. Crim. App. Mar. 1, 2004) (remanding to the post-conviction court to determine whether due process required tolling of statute of limitations based on trial counsel's failure to file Rule 11 application for permission to appeal to the supreme court or Rule 14 motion to withdraw from his representation of petitioner, with the following instruction: "If the post-conviction court determines that the petitioner, through no fault of his own, was denied his right to seek second-tier review and filed his petition within a reasonable time, the court shall grant him the opportunity to seek a delayed appeal to our supreme court."). Here, the post-conviction court obviously concluded, based on the evidence, that due process required that the statute of limitations be tolled in this case.

was just going to keep that testimony time and time again going to trial.

So, from a trial strategy, I didn't want the jury to just keep hearing that. Our position was that he said if he doesn't pay me it's killing me from a financial standpoint.

You had his testimony then against this one Beth Podgeway [sic]. However, if you called these other folks in that would basically corroborate Beth then, obviously, it would look worse towards the defense.

The post-conviction court found that "[c]ounsel's decision in this regard [was] supported by logic and reason, in that some witnesses from the truck stop were called and clearly supported a premeditated act as opposed to a heat of passion type situation." The record fully supports this finding. Furthermore, we agree with the State that the petitioner has not shown how any alleged deficiency in counsel's performance with respect to these witnesses prejudiced his case. When a petitioner contends that trial counsel was ineffective for failing to investigate or present potential witnesses in support of his defense, he bears the burden of presenting these witnesses at the post-conviction evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Here, the petitioner neither named the potential witnesses nor presented their testimony at the evidentiary hearing. Without showing what evidence the witnesses would have provided had they been subpoenaed at trial, the petitioner cannot meet the prejudice prong of the Strickland test. Id. at 758.

We further agree with the State that, in light of the post-conviction court's having granted the petitioner the opportunity to file a delayed application for permission to appeal to the supreme court, the petitioner has also failed to show that he was prejudiced by trial counsel's failure to pursue the appeal or to provide him with a copy of his trial transcript.

## **CONCLUSION**

Based on our review, we conclude that the petitioner has failed to meet his burden of showing he was denied the effective assistance of counsel at trial or on appeal. Accordingly, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE